UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
J & J SPORTS PRODUCTION, INC.,

    Plaintiff,

 - against –

JESSICA LEON, Individually and d/b/a
Mambo King, and L MAMBO KING, CORP.,
d/b/a Mambo King,

    Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
18–CV–2103 (PKC) (RML)

PAMELA K. CHEN, United States District Judge:

 Plaintiff J & J Sports Production, Inc. ("Plaintiff") commenced this action on April 9, 2018 against Defendants Jessica Leon, individually and d/b/a Mambo King ("Leon"), and L Mambo King, Corp., d/b/a/ Mambo King ("L Mambo King") (collectively, "Defendants"), for violations of the Federal Communications Act of 1934 ("FCA"), as amended, 47 U.S.C. §§ 605 and 503, based on Defendants' alleged willful and unauthorized publication of a closed-circuit televised boxing event, titled *"The Fight of the Century" Floyd Mayweather, Jr. v Manny Pacquiao WBA World Welterweight Championship Fight Program* (the "Program"), to which Plaintiff held exclusive distribution rights. (Complaint ("Compl."), Dkt. 1, ¶¶ 1, 11, 19–20, 22, 27.)[1] Plaintiff executed summonses and properly served each Defendant. (Dkts. 5, 6-7.) Defendants have failed to enter an appearance, and the time to answer the complaint has expired. Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the Clerk of Court entered certificates of default, first on

---

[1] Plaintiff references "the state law claims" in the portion of its complaint establishing jurisdiction (Compl. ¶ 2), but does not specifically identify any causes of action arising under state law in the portion of the complaint detailing the factual allegations supporting each claim (*id.* ¶¶ 15–29). "Because plaintiff had the assistance of an attorney in preparing the complaint, the Court will not liberally construe" it as alleging state law claims. *Atencio v. U.S. Postal Serv.*, No. 14-CV-7929, 2015 WL 7308664, at *8 (S.D.N.Y. Nov. 19, 2015).

June 14, 2018 with respect to Defendant L Mambo King and second on September 7, 2018 with respect to Defendant Leon. (Dkts. 12, 16.) Plaintiff moved for default judgement on October 17, 2018. (Dkt. 18.) To date, Defendants have not responded.

For the reasons set forth below, the Court grants in part and denies in part Plaintiff's motion. The Court orders that Plaintiff be awarded $3,000 in damages against Defendant L Mambo King only. Furthermore, Plaintiff may submit a motion for attorney's fees and costs, supported by appropriate documentation, within thirty (30) days from the entry of this Order.

## BACKGROUND

On April 6, 2018, Plaintiff filed a complaint seeking damages against Defendants. (*See generally* Compl., Dkt. 1.)[2] Pursuant to contract, Plaintiff was granted the exclusive nationwide commercial distribution rights to the Program, which was telecasted nationwide on May 2, 2015. (*Id.* ¶ 16.) Plaintiff entered into subsequent sublicensing agreements with various commercial entities throughout North America, including New York, by which Plaintiff granted these entities limited sublicensing rights to publicly exhibit the Program within their respective commercial establishments in the hospitality industry, such as hotels, racetracks, casinos, bars, taverns, restaurants, and social clubs. (*Id.* ¶ 17.) According to the complaint, Defendant Leon is "an individual identified as a 'Principal' of L Mamo King, Corp., which operates the commercial establishment doing business as Mambo King." (*Id.* ¶ 7.) Plaintiff additionally describes Defendant Leon as "an individual identified as the 'Principal' and 'Owner of L Mambo King, Corp. on the New York State Liquor Authority License for L Mambo King, Corp." (*Id.* ¶ 8.)

---

[2] The Court accepts all well-pleaded factual allegations in the complaint—except those relating to damages—as true, summarizing them here where relevant. *See Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp. 2d 200, 204 (E.D.N.Y. 2009) ("[W]hen the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (quotation omitted)).

According to the complaint, Defendant L Mambo King is "an owner, and/or operator, and/or licensee, and/or permittee, and/or person in charge, and/or an individual with dominion, control, oversight[,] and management of the commercial establishment doing business as Mambo King." (*Id.* ¶ 14.)

Although Defendants were never granted sublicensing rights, they displayed the Program at Mambo King on May 2, 2015, resulting in increased profits to Defendants. (*Id.* ¶¶ 13, 19.) Plaintiff alleges that Defendants were able to display the Program through unlawful interception techniques. (*Id.* ¶¶ 10–11.) As Plaintiff summarizes, "[w]ith full knowledge that the Program was not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so, [] Defendants, either through direct action or through actions of employees or agents directly imputable to Defendants," did "unlawfully intercept, receive, publish, divulge, display, and/or exhibit the Program at the time of its transmission at" Mambo King. (*Id.* ¶ 19 (italics omitted).)

To date, Defendants have failed to appear, plead, or otherwise respond to the complaint. The applicable time limit for answering or otherwise responding to the complaint has expired, and certificates of default were entered on June 14, 2018 as to Defendant L Mambo King (Dkt. 12) and on September 7, 2018 as to Defendant Leon. Plaintiff filed a motion for default judgment on December 20, 2018. (Plaintiff's Motion for Default Judgment ("Pl.'s Mot. for Default J."), Dkt. 13.) Plaintiff also filed a Declaration of Service confirming that a true and correct copy of its motion for default judgment, along with the appended exhibit, memorandum of law, affidavit from auditor Cosmo Lubrano, and proposed judgment had been served on Defendants via certified mail

on August 30, 2018. (*Id.*, at ECF[3] 53, 65, 84, 111.) To date, Defendants have failed to file a response to Plaintiff's motion for default judgment.

## DISCUSSION

I.  **Standard of Review**

Under Fed. R. Civ. P. 55(a), the procedure for default judgment against a party who "fails to plead or otherwise defend" in a matter includes two steps: "first, the entry of a default, and second, the entry of a default judgment." *City of N.Y. v. Mickalis Pawn Shop*, 645 F.3d 114, 128 (2d Cir. 2011) (quotation omitted). "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id.* "[A] party's default is deemed to constitute a concession of all well[-]pleaded allegations of liability." *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006) (quotation omitted).

"The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the Court decides it is entitled, to the extent permitted by [Fed. R. Civ. P.] 54(c)."[4] *Mickalis*, 645 F.3d at 128. "[T]he decision to grant a motion for a default judgment lies in the sound discretion of the trial court." *O'Callaghan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007). Default judgments "track[] the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party." *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*,

---

[3] "ECF" refers to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[4] Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c).

4

373 F.3d 241, 246 (2d Cir. 2004). However, "it is also true that a district court need not agree that the alleged facts constitute a valid cause of action," *Mickalis*, 645 F.3d at 128 (quotation omitted), and the Court is therefore "required to determine whether [Plaintiff's] allegations establish [Defendants'] liability as a matter of law," *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

## II. Liability

Plaintiff brings claims against Defendants under § 605 and § 553 of the FCA. Section 605 provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). In this Circuit, courts have applied § 605 to theft of cable communications that were originally radio or satellite communications. *Cmty. Television Sys. Inc. v. Caruso*, 284 F.3d 430, 435 (2d Cir. 2002). Section 553 of the FCA provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).

Where, as here, a plaintiff brings claims under both § 605 and § 553 based on the same set of facts, "the law in this Circuit is clear that [the] plaintiff may recover under only one of those statutes." *Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 114 (E.D.N.Y. 2011); *see Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 129 (2d Cir. 1996) (concluding that, where defendant was liable under both § 605 and § 553, remand was required "for the imposition of damages under § 605(e) instead of the lesser damages available under § 553" (quotation and ellipsis omitted)); *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *3 (E.D.N.Y. Sept. 28, 2007) ("A plaintiff cannot

5

recover under both 47 U.S.C. § 605 and § 553." (quotation and brackets omitted)); *Kingvision Pay-Per-View Ltd. v. Autar*, 426 F. Supp. 2d 59, 62 (E.D.N.Y. 2006) ("Although defendants have admitted liability under both § 605 and § 553, plaintiff can recover under only one statute." (quotation omitted)). For this reason, Plaintiff's request for damages under both statutes (Compl., Dkt. 1, ¶¶ 24, 29) must be rejected. The Court will presume that Plaintiff elects to recover damages under § 605 because it provides for more severe penalties than § 553. *See Kingvision*, 426 F. Supp. 2d at 62 ("Since § 605(e) provides 'far more severe penalties than those of § 553(c),' plaintiff has elected to pursue remedies under § 605(e)." (quoting *Sykes*, 997 F.2d at 1007).

### A. Defendant L Mambo King

Plaintiff alleges that Defendant L Mambo King "is an owner, and/or operator, and/or licensee, and or permittee, and/or person in charge, and/or an individual with dominion, control, oversight[,] and management of the commercial establishment doing business as" Mambo King. (*Id.* ¶ 14.) The Court has taken judicial notice of two entries in New York State's Department of State Corporation and Business Entity Database. *See Saudi v. Marine Atl., Ltd.*, No. 02-CV-2495, 2005 WL 8156849, at *4 (E.D.N.Y. July 1, 2005) (taking judicial notice that entity "is a Delaware corporation, and is listed as such on the New York Department of State Corporation and Business Entity Database"). The first entry lists "L Mambo King Corp" as a domestic business corporation located in Queens, New York that first filed documents with the Department of State on January 10, 2013.[5] The second entry lists "L Mambo King I Corp" as a domestic business

---

[5] *See* Corporation and Business Database, New York Department of State, Division of Corporations, https://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_SEARCH_ENTRY (search "L Mambo King" (current as of Mar. 13, 2019).

corporation located in Queens, New York that first filed documents with the Department of State in May 14, 2015.[6] Based on the foregoing, the Court is persuaded that Defendant L Mambo King is the owner of the commercial establishment doing business as Mambo King.

The Court finds that Plaintiff's well-pleaded allegations state a valid claim against Defendant L Mambo King. Plaintiff held an exclusive license to sublicense and broadcast the Program. (Compl., Dkt. 1, ¶ 16; Affidavit of Joseph M. Gagliardi ("Gagliardi Aff."), Dkt. 13-2, ¶ 3; ECF 74–80 (copy of licensing agreement affixed as exhibit).) The only way Defendant L Mambo King could have broadcast the transmission without violating § 605(a) would have been to contract with Plaintiff through a sublicensing agreement. (Compl., Dkt. 1, ¶ 17; Gagliardi Aff., Dkt. 13-2, ¶¶ 3, 8, ECF 77). Despite failing to contract with Plaintiff, Defendant L Mambo King screened the Program at Mambo King on May 2, 2015. (Compl., Dkt. 1, ¶¶ 9–14; Affidavit of Cosmo Lubrano ("Lubrano Aff."), Dkt. 18-3, at ECF 107–08.)[7] In this Circuit, courts have repeatedly found that such allegations are sufficient to establish liability under § 605(a). *See, e.g.*, *J & J Sports Prods., Inc. v. LX Food Grocery Inc.*, No. 15-CV-6505, 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016); *J & J Sports Prods., Inc. v. McAdam*, No. 14-CV-5461, 2015 WL 8483362, at *3 (E.D.N.Y. Dec. 9, 2015); *J & J Sports Prods., Inc. v. 1400*

---

[6] Because this date of filing post-dated the date of the alleged display of the Program at Mambo King, the Court does not consider the corporation known as "L Mambo King I Corp" as relevant to this action.

[7] The affidavit of auditor Cosmo Lubrano describes the Program that he viewed on the televisions located within Mambo King on May 3, 2015 at approximately 12:09 a.m. as follows: "I observed the Tecate logo on the ring mat as the ring posts. I also observed the MGM logo on the ring posts. The Sho time [sic] HBO ppv logo on the bottom right of the screen. The fighters, Pacquaio in yellow and red trunks, Mayweather in Black and gold trunks were observed in the ring fighting. I observed the 5th round, and its conclusion where the fighters returned to their corners." (Lubrano Aff., at ECF 107.) Based on documents submitted by Plaintiff, the Court deduces that Mr. Lubrano did in fact view the Program to which Plaintiff held exclusive rights. (*See* Gagliardi Aff., Dkt. 18-2, Exhibit ("Ex.") 2, at ECF 81.)

*Forest Ave. Rest.*, No. 13-CV-04299, 2014 WL 4467774, at *6 (E.D.N.Y. Sept. 9, 2014); *J & J Sports Prods., Inc. v. Tellez*, No. 11-CV-1240559, 2011 WL 6371521, at *3 (E.D.N.Y. Dec. 20, 2011).

The Court therefore grants Plaintiff's motion for default judgment as to Defendant L Mambo King.

### B. Defendant Leon

Plaintiff also seeks to hold Defendant Leon individually liable. Where, as here, a plaintiff successfully alleges that the owner of a commercial establishment has violated § 605, the plaintiff "may seek to impose liability on the [owner] under the theories of 'contributory infringement' or 'vicarious liability.'" *LX Food Grocery*, 2016 WL 6905946, at *2 (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997). "Contributory infringement occurs when a defendant authorized the violations." *Id.* at *2 (citing *Softel*, 118 F.3d at 971). A defendant may be held vicariously liable where she had a "right and ability to supervise that coalesced with an obvious and direct financial interest in the exploitation of copyrighted materials.'" *Softel*, 118 F.3d at 971 (quotation and brackets omitted).

Plaintiff's complaint suggests that it seeks to hold Defendant Leon liable on theories of both contributory infringement and vicarious liability. Plaintiff alleges that "Defendant, Jessica Leon, is an individual identified as a 'Principal' of L Mambo King, Corp., which operates" Mambo King. (Compl., Dkt. 1, ¶ 7.) Additionally, Plaintiff states that Defendant Leon "is an individual specifically identified as the 'Principal' and 'Owner' of L Mambo King, Corp. on the New York State Liquor Authority License for L Mambo King, Corp. License Serial

No. 1283552)." (*Id.* ¶ 8.) With regard to the violations of law, Plaintiff makes the following allegations:

> 9. . . . [O]n Saturday, May 2, 2015[,] . . . Defendant[] Jessica Leon had the right and ability to supervise the activities of L Mambo King, Corp. which included the unlawful interception of Plaintiff's *Program*.
>
> 10. . . . [O]n Saturday, May 2, 2015[,] . . . [Defendant] Jessica Leon as an individual specifically identified on New York State Liquor Authority License[8] for L Mambo King, Corp. had the obligation to supervise the activities of Mambo King, which included the unlawful interception of Plaintiff's *Program*, and, among other responsibilities, had the obligation to ensure that the liquor license was not used in violation of law.
>
> 11. . . . [O]n Saturday, May 2, 2015[,] . . . Defendant Jessica Leon specifically directed or permitted the employees of Mambo King to unlawfully intercept and broadcast Plaintiff's *Program* at Mambo King or intentionally intercepted, and/or published the *Program* at Mambo King herself. The actions of the employees of Mambo King are directly imputable to Defendant Jessica Leon by virtue of [her] acknowledged responsibility for the operation of Mambo King.
>
> 12. . . . [O]n Saturday, May 2, 2015, Defendant Jessica Leon[,] as the "Principal" and "Owner" of L Mambo King, Corp. and as an individual specifically identified on the New York State Liquor Authority License for L Mambo King Corp., had an obvious and direct financial interest in the activities of Mambo King, which included the unlawful interception of Plaintiff's *Program*.
>
> 13. . . . [T]he unlawful broadcast of Plaintiff's *Program*, as supervised and/or authorized by Defendant Jessica Leon, resulted in increased profits for Mambo King.

(Compl., Dkt. 1, ¶¶ 9–13 (emphases in original).)

---

[8] The Court takes judicial notice of an entry in the New York State Liquor Authority Database that identifies Jessica Leon and Ronny Leon as principals of Defendant L Mambo King Corp. during the time in which Plaintiff alleges Defendants aired the Program at Mambo King. *See* Public Query – Results, Search License Number 1283553, New York State Liquor Authority: Division of Alcoholic Beverage Control, https://www.tran.sla.ny.gov/servlet/ApplicationServlet?pageName=com.ibm.nysla.data.publicquery.PublicQuerySuccessfulResultsPage&validated=true&serialNumber=1283552&licenseType=OP (search License Number 1283553); *see also Singleton v. Fifth Generation, Inc.*, No. 15-CV-474, 2016 WL 406295, at *4 (N.D.N.Y. Jan. 12, 2016) (taking judicial notice of New York State Liquor Authority's Brand Label Registration approvals).

The Court holds that these allegations are insufficient to support liability for Defendant Leon under either contributory infringement or vicarious liability.[9] At the outset, the Court notes that Plaintiff has not submitted any evidence indicating that Defendant Leon is, in fact, a "principal" or "owner" of L Mambo King Corp, even though it appears that she is.[10] However, even if the Court accepts that Defendant Leon is the principal and owner of Mambo King, the Court does not accept the allegations in the complaint regarding Defendant Leon that constitute legal conclusions, such as the allegation that Defendant Leon "had the right and ability to supervise the activities of L Mambo King, Corp. which included the unlawful interception of Plaintiff's *Program*." (Compl., Dkt. 1, ¶ 9 (emphasis in original).) *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (quotations, citation, and brackets omitted)); *United States v. Thomas*, No. 18-CV-1104, 2019 WL 121678, at *4 (E.D.N.Y. Jan. 7, 2019) (noting that, on a motion for default judgment, "a pleading's legal conclusions are not assumed to be true" and "the factual allegations in the complaint must themselves be sufficient to establish a right to relief" (quotations omitted)); *LX Food Grocery*, 2016 WL 6905946, at *3 (holding that individual defendants were not vicariously liable under § 605 where Plaintiff conclusorily alleged that

---

[9] Because Plaintiff does not explicitly mention contributory infringement or vicarious liability in its Memorandum of Law in Support of Default Judgment, Dkt. 18-1, the Court relies on the complaint as setting forth all of Plaintiff's theories of liability as to Defendant Leon.

[10] The entries in the New York State Division of Corporations Database and the New York State Liquor Authority Database, of which the Court has explained it takes judicial notice, *supra*, furnish arguably sufficient proof that Plaintiff is correct. The entry in the New York State Liquor Authority Database identifies Jessica Leon as a co-principal of L Mambo King Corp. However, the New York State Division of Corporations Database entry indicates that process may be served on L Mambo King Corp. by mailing to an individual named *Julia* Y. Leon.

10

"both Individual Defendants 'had a right and ability to supervise the infringing activities . . . on the night the [event or program] was shown at Defendant's Establishment,' and that they 'had an obvious and direct financial interest in the exploitation of the copyrighted materials'").

The Court therefore denies Plaintiff's motion for default judgment as to Defendant Leon.

### III. Damages

Because Plaintiff has established liability as to Defendant L Mambo King, Plaintiff is entitled to damages. On a motion for default judgment, the Court will not accept as true Plaintiff's factual allegations related to damages. *LX Food Grocery*, 2016 WL 6905946, at *2 (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). "The Court must be satisfied that Plaintiff has met the burden of proving damages to the court with 'reasonable certainty.'" *Id.* (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "Although requests for damages are usually established by the plaintiff in an evidentiary hearing, the court can make such a determination without a hearing when supported by sufficiently detailed affidavits and documentary evidence." *Id.* (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 19997)).

In the complaint, Plaintiff alleges that it is entitled to the following from Defendant L Mambo King for its violation of § 605: (1) actual damages in an amount of $10,000; (2) enhanced damages for each willful violation in an amount of $100,000; and (3) the recovery of full costs, including reasonable attorneys' fees. (Compl., Dkt. 1, ¶ 24.) In its motion for default judgment, however, Plaintiff requests $9,000 in statutory damages, $27,000 in enhanced damages, and pre- and post-judgment interest at the federal statutory rate. (Pl.'s Mot. for Default J., Dkt. 18-1, at ECF 52.)

11

A. **Statutory Damages**

1. **Actual Damages**

Section 605 of the FCA provides for a per-violation recovery "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(c)(i)(II). "The amount of damages to be assessed pursuant to Section 605 rests within the sound discretion of the Court." *Time Warner Cable of N.Y.C. v. Sanchez*, No. 02-CV-5855, 2003 WL 21744089, at *3 (S.D.N.Y. July 8, 2003). The Court finds that Plaintiff is entitled to $3,000 in statutory damages.

> Courts in this jurisdiction typically utilize two methodologies to calculate damages under Section 605(e)(C)(i)(II), and base the damages award on the higher of the two totals. Under the 'flat fee' method, the court calculates the amount that defendants would have paid in exchange for the right to show the [event or program] legally—in this case, Plaintiff's licensing fee. Under the 'per-person' method,[11] damages are equal to the amount an individual consumer would have paid to view the [event or program] pay-per-view multiplied by the number of consumers who watched the illegally transmitted [event or program].

*LX Food Grocery*, 2016 WL 6905946, at *4 (citations omitted).

The Court determines that Plaintiff is entitled to $3,000 in actual damages against Defendant L Mambo King under the "flat fee" method. Plaintiff submitted a "rate card" that, according to Plaintiff, establishes that Mambo King would have been charged a licensing fee of $3,000 to broadcast the Program.[12] (Pl.'s Mot. for Default J., Dkt. 18-1, at ECF 61, 83.) The

---

[11] Plaintiff has not presented the Court with sufficient evidence to determine what a damages award would be under the "per-person" method.

[12] The Court notes that Cosmo Lubrano's affidavit indicates that Mambo King had a capacity of 150 people, which would appear to suggest, based on the rate card submitted by Plaintiff, that the licensing fee for Mambo King to broadcast the Program would be $6,000. (*See* Gagliardi Aff., Dkt. 18-2, Ex. 2, at ECF 83; Lubrano Aff., Dkt. 18-3, at ECF 109.) However, according to Plaintiff's President, Joseph M. Gagliardi, the licensing fee Mambo King would have been charged is $3,000. (Pl.'s Mot. for Default J., Dkt. 18-1, at ECF 61; Gagliardi Aff., Dkt. 18-2, at ¶ 8.) The Court therefore adopts Plaintiff's own figure.

Court declines to award the $9,000 it requests—three times the licensing fee—and observes that Plaintiff's legal arguments in support of such an award rely almost entirely on district court decisions outside this Circuit. *Cf. L.S. v. Webloyalty.com, Inc.*, No. 10-CV-1372, 2014 WL 3547640, at *5 (D. Conn. July 17, 2014) (noting that the district court is "not bound by the decisions of any other district court in the nation, nor by the decisions of any circuit court other than the Second").

### 2. Enhanced Damages

Section 605(e)(3)(C)(ii) provides courts with a mechanism to impose enhanced damages for an FCA violation. Specifically, "[i]n any case in which the court finds that the [FCA] violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," the court has discretion to" increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(ii).

Plaintiff requests $27,000 in enhanced damages. (Pl.'s Mot for Default J., Dkt. 18-1, at ECF 52.) The Court declines to grant this request.

> To determine whether willful conduct warrants an award of enhanced damages, courts typically consider, *inter alia*, whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks.

*J & J Sports Prods., Inc. v. Big Daddy's Theme Palace*, No. 14-CV-2765, 2015 WL 58606, at *3 (E.D.N.Y. Jan. 5, 2015) (quotation omitted).

Plaintiff has not alleged facts or presented sufficient evidence to support a finding of willfulness under any of these factors. First, there is no evidence of repeat violations. Second, "[t]o the extent Defendants' failure to pay for a license constitutes 'actual damages,' that cost is

already factored into Plaintiff's statutory damages award." *LX Food Grocery*, 2016 WL 36905946, at *5. Third, the evidence submitted by Plaintiff indicates that there were approximately 30 patrons in Mambo King when the violation occurred (Lubrano Aff., Dkt. 18-3, at ECF 107), and Plaintiff presents no evidence this number of patrons exceeds the number that would have been present at any other time or that Defendant L Mambo King recovered increased profits as a result of airing the Program. Fourth, Plaintiff presents no proof that SL Lounge advertised its airing of the Program.[13] Finally, Plaintiff's evidence establishes that no cover charge was imposed on customers during the unlawful airing of the Program at Mambo King. (*Id.* at ECF 108.)

Accordingly, the Court does not find that enhanced damages are warranted in this case. *See J & J Sports Prod., Inc. v. El Ojo Aqua Corp.*, No. 13-CV-6173, 2014 WL 4700014, at *6 (E.D.N.Y. Aug. 29, 2014) ("An affirmative act can be done in good faith or bad, and the FCA explicitly recognizes that some violations—which necessarily follow an affirmative action to obtain an unauthorized broadcast—may be the result of an innocent mistake.").

**B.  Costs and Interest**

The FCA requires courts to "direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails." 48 U.S.C. § 605(e)(3)(B)(iii). Although Plaintiff indicates that it requests attorney's fees (Compl., Dkt. 1, ¶ 24), Plaintiff does not identify a specific monetary figure. The Court grants Plaintiff leave to submit an affidavit and accompanying letter establishing the amount of attorney's fees it seeks to recover within thirty (30) days from the entry of this Memorandum and Order.

---

[13] Indeed, Mr. Lubrano indicated in his affidavit that there were no advertisements or promotions for the Program on display at Mambo King during the violation. (Lubrano Aff., Dkt. 18-3, at ECF 108.)

14

Additionally, Plaintiff requests pre- and post-judgment interest at the federal statutory rate. (Pl.'s Mot. for Default J., Dkt. 18-1, at ECF 52.) Although § 605 of the FCA does not provide for an award of pre-judgment interest, the Court has discretion to award pre-judgment interest when doing so is "fair, equitable[,] and necessary to compensate the wronged party fully." *Wickham Contracting Co. v. Local Union No. 3, IBEW*, 955 F.2d 831, 835 (2d Cir. 1991). However, "[c]ourts should not award pre[-]judgment interest where the statutory obligation on which interest sought is punitive in nature." *LX Food Grocery*, 2016 WL 6905946, at *5 (quotation omitted). As that is the basis on which Plaintiff seeks enhanced damages (Pl.'s Mot. for Default J., Dkt. 18-1, at ECF 62–65), the Court denies Plaintiff's request for pre-judgment interest. *See J & J Sports Prods., Inc. v. La Ruleta, Inc.*, No. 11-CV-4422, 2012 WL 3764062, at *5 (E.D.N.Y. Aug. 7, 2012) ("Most courts in this district that have addressed this issue have declined to award [pre-judgment] interest noting that '[s]tatutory damages under the [FCA] are analogous to punitive damages in that they are designed to deter others from similar infringing activity.'" (collecting cases)).

The Court, however, grants Plaintiff's request for post-judgment interest as provided for by 28 U.S.C. § 1961.

## CONCLUSION

For the reasons state above, the Court grants Plaintiff's motion for default judgment as to Defendant L Mambo King and denies it as to Defendant Leon. The Court orders that Plaintiff be awarded $3,000 in actual statutory damages against Defendant L Mambo King. The Court grants Plaintiff leave to submit an affidavit and accompanying letter establishing the amount of attorney's fees it seeks to recover within thirty (30) days of this Memorandum and Order. The Clerk of Court is respectfully directed to enter judgment in Plaintiff's favor and close this case. Finally, the Court

orders Defendant L Mambo King to pay Plaintiff post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 22, 2019
      Brooklyn, New York